## TRI-STATE REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12917.

United States Court of Appeals,
Fifth Circuit.

March 2, 1950.

Robert A. Littleton, Washington, D. C., for petitioner.

George D. Webster, Sp. Asst. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief' Counsel, Bureau of Internal Revenue, Washington, D. C., Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., Lee A. Jackson, Sp. Asst. to Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and WALLER and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This appeal from the Tax Court involves excess profits taxes for the calendar year that ended December 31, 1942. The sole question presented is whether the Tax Court erred in sustaining the Commissioner's determination that the petitioner was not entitled prior to April 18, 1942 to include in its equity invested capital certain sums allegedly contributed as paid-in surplus. The facts as found by the Tax Court are briefly as follows:

The petitioner is a Delaware corporation qualified to do business in the State of Louisiana and for the period involved filed its return with the Collector at New Orleans. Organized in the year 1936 the corporation remained inactive until on or about December 22, 1938 when it began to acquire property for use in its business. At that time W. H. Johnson, petitioner's president, paid in to the corporation its authorized capital of $1,000 and there was issued to him all of the corporation's capital stock, with the exception of two shares which were issued to other persons to qualify them as members of petitioner's board of directors. At the inception of its business activities petitioner started out by buying some depressed farm lands and then some unimproved city property. The funds used to pay for these properties were advanced to petitioner by Johnson. Later on during the years 1938 and 1939 petitioner acquired considerable property in the territory which was serviced by Johnson's bus company, Tri-State Transit Company, and this property was improved for use as bus depots and garages under a lease thereof to the Transit Company. The property thus acquired by petitioner was used in its business as a capital asset and the funds used to acquire and improve the property were advanced to petitioner by Johnson.

Johnson began advancing sums of money to petitioner as above described in the latter part of 1937 or early 1938 and he continued making such advances until 1942. During the years 1938 and 1942, inclusive, he

made withdrawals of part of the amounts advanced to petitioner.[1] These transactions were recorded by petitioner's bookkeeper in its journal and the entries were then posted in petitioner's account payable ledger under an account designated: "W. H. Johnson Account No. 442."[2] On April 18, 1942 Johnson sent a letter to his accountants authorizing them to transfer $112,000 from his account and credit paid in surplus account. This letter was sent to petitioner's accountants at the time its Federal tax return for the year 1941 was being prepared, its full text is set forth in the margin.[3] In 1940 and in the three succeeding years petitioner submitted foreign corporation franchise tax returns to the State Department of Internal Revenue and, as was required, it included in each of the returns a balance sheet from the books of the corporation.[4] For the calendar year 1940 petitioner filed a Federal tax return which showed a paid-in or capital surplus of $143,047.86.[5] For the calendar year 1941 petitioner filed a Federal tax return which included a balance sheet showing a paid-in surplus as of January 1, 1941, in the amount of $83,444.25 and a paid-in surplus as of December 31, 1941, of $112,000.00. This return was prepared after Johnson's letter of April 18, 1942.

The Tax Court heard the evidence and was afforded the opportunity to appraise the credibility of the witnesses and in a carefully considered opinion it sustained the commissioner's determination that the credit balance in the open account on petitioner's books represented loans and did not constitute equity invested capital within the meaning of Sec. 718 (a)[6] of the Internal Revenue Code, 26 U.S.C.A. § 718 (a), prior to April 18, 1942. We cannot on this record say that the findings of the Tax Court were clearly erroneous,[7] but we can

1. In discussing the nature of the withdrawals which Johnson made from the open account and the failure of proof in respect thereto the Tax Court said:
   "If they were from surplus, as petitioner contends, they must have been dividends. If they were dividends, they should have been declared by petitioner's directors. See Delaware Corporation Law Annotated—1947, Sec. 34. But we do not have before us any resolution of its board of directors authorizing the declaration of dividends. If the withdrawals were dividends, then Johnson should have reported them as income in his tax returns. His individual returns were not placed in evidence, so we are unable to ascertain how he treated the withdrawals."

2. The credit balance in that account for the years indicated was:
   December 31, 1939 ........ $ 83,444.25
   December 31, 1940 ........ 109,757.40
   December 31, 1941 ........ 112,000.00

3. The letter reads as follows: "With reference to the status of my open account on the books of the Tri-State Realty Company, which shows a credit balance of $112,179.74, represented by advances made by me to Tri-State Realty Company, it is my desire, and you are authorized, to transfer $112,000.00 of the above amount from my account and credit paid in surplus account. The balance in the account at January 1, 1941, amounting to

$83,444.25 shall also be regarded as paid-in surplus on the January 1, 1941 balance sheet."

4. The Franchise Tax Returns for the years indicated reflected the following paid-in surplus:
   January 31, 1939 .......... $ 90,724.16
   January 31, 1940 .......... 143,047.86
   January 31, 1941 .......... 112,000.00
   January 31, 1942 .......... 112,000.00
   It is to be noted that there is a discrepancy between the credit balances shown in the open account (footnote 1, supra) and the totals indicated as paid-in surplus in certain of the above mentioned tax returns.

5. There is an unexplained discrepancy between this amount of paid-in surplus and the credit balance contained in the open account for the same period.

6. Sec. 718. Equity Invested Capital.
   (a) Definition.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—
   (1) Money Paid In.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

7. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

and do say that the Tax Court was correct in its holding that there was insufficient evidence to overcome the presumption of correctness of the Commissioner's determination.[8]

The judgment of the Tax Court is affirmed.

---

8. Gem Jewelry Co. v. Commissioner, 5 Cir., 165 F.2d 991, certiorari denied 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770.